**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES

    Plaintiff,

CASE NO. 05-81121
HON. LAWRENCE P. ZATKOFF

v.

MICHELLE WILSON

    Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 13, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court *sua sponte*. Pursuant to the Court's request, on January 26, 2006, Plaintiff submitted a Memorandum addressing the Hobbs Act's Interstate Commerce Requirement and whether the facts in the present case met this requirement. For the reasons set forth below, the Court will REJECT the Rule 11 Plea Agreement and SET ASIDE the Guilty Plea in this case.

**II. BACKGROUND**

On December 12, 2005, Michelle Wilson was charged by Information with one count of extortion in violation of 18 U.S.C. 1951 (Hobbs Act). The Information alleges that Wilson, while

working as an officer at the Wayne County Jail, was paid approximately $400 for bringing in unauthorized food and beverages to inmates. On January 17, 2006, Wilson pled guilty to the Information pursuant to a Rule 11 Plea Agreement. The Court accepted the guilty plea and took the Rule 11 Plea Agreement under advisement.

At the guilty plea hearing, the Court questioned Assistant U.S. Attorney (AUSA) Daniel Lemisch regarding the case's connection to interstate commerce. The Court, still not fully satisfied that the interstate commerce connection had been satisfied, then ordered AUSA Lemisch to submit a memorandum on the subject. The Government filed this memorandum on January 26, 2006.

In addition to the facts admitted to at the guilty plea hearing, the Court has had an opportunity to learn more about the facts of the case from the pre-sentence report. For the purpose of determining the factual basis of the guilty plea, the Court now refers to these additional facts.

Wilson was working with Defendant Dorian Merriewether[1] in late 2004. Merriewether asked Wilson to meet Richard Bryan Lamar to pick up food for two inmates at the Wayne County Jail. Wilson has known Lamar's father since childhood. Wilson has asserted that she believed that the food was for Lamar and his fellow inmates.

Wilson met Lamar and two others at a gas station, where they filled Wilson's car up with $10 worth of gasoline and gave her three corned beef sandwiches. She took the sandwiches to the Wayne County Jail and gave them to Defendant Merriewether. On December 31, 2004, Lamar gave Wilson two bottles of cognac, a marijuana blunt, a cellular phone, and three one-hundred dollar bills.

---

[1] In addition to Defendant Wilson's case, the Court has three companion cases before it which relate to events occurring at the Wayne County Jail: *U.S. v. Dorian Merriewether* (No. 06-20001), *U.S. v. Laronne Strother* (No. 06-20073), and *U.S. v. Ronald Nunn* (No. 06-20074).

Wilson asserts that she left the blunt with Lamar, but took the cognac and the money. She drank the cognac prior to starting her shift, but then bought one pound of shrimp and delivered it to an inmate. On three other occasions, Lamar gave Wilson money in exchange for delivering food to inmates at the jail.

### III. LEGAL STANDARD

Rule 11 of the Federal Rules of Criminal Procedure sets forth the procedure for the entering of a guilty plea in federal criminal cases. In general, Rule 11 exists in order to ensure that a criminal defendant enters his guilty plea knowingly and voluntarily. An additional requirement of Rule 11 is to ensure that there "there is a factual basis for the plea." FED. R. CRIM. P. 11(b)(3).

### IV. ANALYSIS

In the present case, the Court is not satisfied that there is a factual basis for the plea. Before addressing the specific deficiencies of Defendant's plea in the present case, the Court will begin with an analysis of the purpose and requirements of Rule 11.

**A. Rule 11 of the Federal Rules of Criminal Procedure**

Because a large majority of criminal cases are resolved through the entry of guilty pleas, the entry of guilty pleas are very important to the administration of the criminal justice system in the United States. *See* Wright, FED. PRACT. AND PROC., § 171.1; *see also* FED. R. CRIM. P. 11, Advisory Comm. Notes. The Supreme Court has recognized that "a guilty plea is a grave and solemn act to be accepted only with care and discernment." *Brady v. U.S.*, 397 U.S. 742, 747 (1970).

Rule 11 was initially enacted in 1944 as a short and simple rule. *See* FED. R. CRIM. P. 11,

Advisory Comm. Notes. The rule merely restated what was already the existing law and practice, that guilty pleas must be entered into knowingly and voluntarily. Rule 11 was modified slightly in 1966. Among the changes was an addition which required the court to satisfy itself that there is a factual basis for the plea before entering judgment. *Id*.

In two cases decided in 1969, the Supreme Court addressed both the procedural and constitutional requirements for a valid guilty plea. In *McCarthy v. United States*, 394 U.S. 459 (1969), the Supreme Court addressed the procedural requirements of the 1966 version of Rule 11. The Court explained the two purposes of the Rule:

> [First,] it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.

*Id*. at 465. The Court continued and explained the purpose of the 1966 Amendment to Rule 11:

> Prior to the 1966 amendment, however, not all district judges personally interrogated defendant before accepting their guilty pleas. With an awareness of the confusion over the Rule's requirements in this respect, the draftsmen amended it to add a provision 'expressly requir(ing) the court to address the defendant personally.' This clarification of the judge's responsibilities quite obviously furthers both of the Rule's purposes. By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he also will develop a more complete record to support his determination in a subsequent post-conviction attack.

*Id*. at 465-66.

In addition to addressing the "knowingly" and "voluntarily" requirements of Rule 11, the *McCarthy* Court thoroughly explained the requirement that the court establish a "factual basis for the plea." The Court explained:

> [I]n addition to directing the judge to inquire into the defendant's understanding of

>the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' ***Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge***.'

*Id*. at 467 (citations omitted) (emphasis added). Ultimately, the Court concluded that a district judge cannot comply with Rule 11 unless he "personally inquire[s] whether the defendant understood the nature of the charge." *Id*.

Two months after addressing the procedural requirements of Rule 11 in *McCarthy*, in *Boykin v. Alabama*, 395 U.S. 238 (1969), the Court determined that the taking of a guilty plea implicates several constitutional rights. The Court explained: "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Id*. at 242. The Court continued:

>Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.

*Id*. at 243 (citations omitted).

In 1975, and in the wake of the Supreme Court's decision in *Boykin*, Rule 11 underwent numerous changes so as to further protect defendants from unknowingly or involuntarily waiving their constitutional rights. Among those changes, Rule 11 imposed a list of affirmative duties on the court. Those duties remain in the current version of Rule 11:

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

>   **(1) Advising and Questioning the Defendant.** Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
>> (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
>> (C) the right to a jury trial;
>> (D) the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;
>> (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
>> (F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;
>> (G) the nature of each charge to which the defendant is pleading;
>> (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;
>> (I) any mandatory minimum penalty;
>> (J) any applicable forfeiture;
>> (K) the court's authority to order restitution;
>> (L) the court's obligation to impose a special assessment;
>> (M) the court's obligation to apply the Sentencing Guidelines, and the court's discretion to depart from those guidelines under some circumstances; and
>> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.
>
>   **(2) Ensuring That a Plea Is Voluntary.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).
>
>   **(3) Determining the Factual Basis for a Plea.** Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

As can be seen from the extensive procedural requirements of the current version of Rule 11 and from the above-discussed Supreme Court cases, the taking of valid guilty pleas remains an important duty of the district courts in order to safeguard the constitutional rights of criminal defendants. This Court continues to take that duty seriously. Accordingly, the Court has *sua sponte*

raised questions as to the validity of Defendant's guilty plea.

**B. Whether the Alleged Conduct Satisfies the Interstate Commerce Requirement**

In the present case, Defendant Wilson has been charged with one count of extortion pursuant to the Hobbs Act. The parties have stipulated that the crime affects interstate commerce and that accordingly, the Hobbs Act's interstate commerce requirement has been satisfied. As discussed above, however, the fact that the parties have stipulated that the crime affects interstate commerce does not relieve the Court of its responsibility under Rule 11 to ensure that "there is a factual basis for the plea." The Court will now examine whether the Hobbs Act's interstate commerce requirement has, in fact, been satisfied.

**1. Purpose of the Hobbs Act**

The Hobbs Act was passed in 1948 as a revision to the Anti-Racketeering Act of 1934. The main purposes of the Act was to control labor racketeering, to deter professional gangsterism, and to free interstate commerce from the destructive burdens of extortion. *See U.S. v. Brecht*, 540 F.2d 45 (2nd Cir. 1976); *see also Carbo v. U.S.*, 314 F.2d 718 (9th Cir. 1963); *see also U.S. v. Massei*, 390 F. Supp. 1098 (D.C. Penn. 1975). This purpose is largely apparent from the explicit language of the Act:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951. The Act further explains the prohibited conduct by defining "robbery," "extortion," and "commerce:"

(1) The term "robbery" means the unlawful taking or obtaining of personal property

> from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
> (3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

*Id*. Based on these broad definitions, the courts have interpreted the Hobbs Act as a broad federal prohibition on extortion, and not simply as a prohibition on organized crime. *See Stirone v. U.S.,* 361 U.S. 212 (1960) ("[The Hobbs] Act speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence.").

**2. The Interstate Commerce Requirement**

In *United States v. Lopez*, the Supreme Court ruled that the Guns Free School Act of 1990 had exceeded Congressional authority under the Constitution's Commerce Clause. *United States v. Lopez*, 514 U.S. 549 (1995) ("We hold that the Act exceeds the authority of Congress '[t]o regulate Commerce . . . among the several States . . . .' U. S. Const., Art. I, §8, cl. 3."). In restraining Congressional authority under the Commerce Clause, the Court explained that if it were to accept the broad view advocated by the Government in that case, "we are hard pressed to posit any activity by an individual that Congress is without power to regulate."

Despite the Supreme Court's holding in *Lopez*, and later in *U.S. v. Morrison*, 529 U.S. 598 (2000) (holding that portions of the Violence Against Women Act of 1994 exceeded Congress'

authority under the Commerce Clause), many of the circuit courts of appeal have continued to take a *de minimis* approach in interpreting the interstate commerce requirement under the Hobbs Act. In *U.S. v. Smith*, 182 F.3d 452 (6th Cir. 1999), the Sixth Circuit adopted the same approach: "We join our sister circuits and hold that the *de minimis* standard for the interstate commerce effects of individual Hobbs Act violations survived *Lopez*." Accordingly, the Government is correct in stating in its memorandum it need only show that Defendant's Hobbs Act violation had a *de minimis* effect on interstate commerce. Even a *de minimis* standard, however, is not a non-existent standard. The Court believes that there are sufficient grounds for concluding that the *de minimis* nexus to interstate commerce has not been established in this case.

The Government argues that it need only show a "realistic probability" that an extortion have an effect on interstate commerce. *See United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990). Specifically, the Government argues that the interstate commerce nexus is satisfied because (1) the jail where Defendant worked received federal money and because (2) the bribe money paid to Defendant was most likely paid with drug money which had been obtained through the interstate sale of drugs. For the Court to accept either of these arguments, requires a significant stretch of the interstate commerce requirement.

For support, the Government cites *U.S. v. Box*, 50 F.3d 345, 353 (5th Cir. 1995) and *United States v. Jones*, 30 F.3d 276, 284-85 (2nd Cir. 1994). In *Box*, the Fifth Circuit upheld a Hobbs Act conviction where police extorted money from drug dealers. The Fifth Circuit reasoned that "extortion which deplete[s] funds otherwise available for drug trafficking obstruct[s] interstate commerce within the meaning of the Hobbs Act." In *U.S. v. Jones*, the Second Circuit similarly held that the robbery of an individual during a cocaine deal had a sufficient effect on interstate commerce

9

under the Hobbs Act because following the robbery there were less funds available to purchase cocaine, a product which travels in interstate commerce.

Despite some factual similarity, the broad "depleted fund" holdings of *Box* and *Jones* are distinguishable. In each of those cases, the victim was a drug dealer, and the money taken from the victim had at least some level of connection to drug trafficking. In the present case, a prisoner bribed a guard in order to attain better jail food and beverages. The only connection to drug trafficking is the Government's assertion that because the prisoner was in jail on drug charges, maybe some of the bribe money had some connection with interstate drug trafficking. This connection to interstate commerce is far more tenuous than the connection in *Box* and *Jones*. In any event, *Box* and *Jones* are not Sixth Circuit holdings and this Court is not required to follow them.

As Sixth Circuit support, the Government relies on *United States v. Davis*, 707 F.2d 880 (6th Cir. 1983), where a county sheriff's Hobbs Act conviction was upheld where the sheriff forced deputy sheriffs to contribute to his re-election campaign fund. This seemingly intrastate activity was nevertheless found to affect interstate commerce because the deputies had received some level of federal funds for training purposes, and such interstate funds were presumably commingled with the funds that were wrongfully contributed to the sheriff's re-election campaign. Based on this case, the Government argues that because the jail where Defendant worked received some federal funds, the bribing of the guards affected interstate commerce as it did in *Davis*.

The present facts, however, are distinguishable from *Davis*. In *Davis*, the money that was extorted from sheriff's deputies had some connection to the fact that they had been partially paid in federal funds. In the present case, the Government is not asserting that any of the federal funds paid to Defendant as part of his employment was extorted. Instead, the Government is asserting that

Defendant extorted money from prisoners. The prisoner's money, however, was not federal money, and accordingly, the comparison to *Davis* is misplaced.

### 3. The Interstate Commerce Requirement has not Been Met

Though the Interstate Commerce Requirement in Hobbs Act cases generally presents a low threshold for the Government to surpass, the Court believes that the facts in support of the guilty plea in the present case fail to meet that threshold. Defendant transported food and beverages to inmates at the Wayne County Jail in exchange for money. The Court fails to see how this affected, or had any "realistic probability" of affecting, interstate commerce. If the Court were to adopt the Government's position and hold that such a transaction implicates interstate commerce, the Court is hard-pressed to believe that there are *any transactions* which do not affect interstate commerce. Accordingly, because the Court is not satisfied that there is a factual basis for the present guilty plea, the Court REJECTS the Rule 11 Plea Agreement and SETS ASIDE the Guilty Plea.

### V. CONCLUSION

For the above reasons, the Court REJECTS the Rule 11 Plea Agreement and SETS ASIDE the Guilty Plea.

IT IS SO ORDERED.

                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated: June 13, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 13, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290